Case 4:20-cv-03186   Document 29   Filed on 09/20/23 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
September 20, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHARLES McCRAY, a/k/a CHARLES LASTON, SPN # 01154346, | § § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:20-3186 |
| ED GONZALEZ, *et al.*, | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Charles McCray, also known as Charles Laston, proceeds *pro se* and *in forma pauperis* in this civil rights suit. McCray alleges that the defendants denied him adequate treatment for Hepatitis C during his detention at the Harris County Jail. *See* Dkt. 1 (complaint); Dkt. 14 (more definite statement). Two defendants have appeared and moved for summary judgment (Dkt. 27). McCray has not responded, and the time to respond has expired. Having considered the pleadings, the motion and briefing, the applicable authorities, and all matters of record, the Court determines that summary judgment should be granted for the defendants and that McCray's claims against the unserved defendant should be dismissed. The Court's reasons are explained below.

**I.     BACKGROUND**

McCray, a pretrial detainee, was admitted to the Harris County Jail on December 20, 2018. He faces two criminal cases and his next court date in each case is October 4,

2023. *See* Find Someone in Jail, Harris County Sheriff's Office, available at https://harriscountyso.org/JailInfo/FindSomeoneInJail (last visited Sept. 15, 2023); Dkt. 27-6.

McCray's complaint names four defendants: (1) Sheriff Ed Gonzalez; (2) Dr. Laxman Sunder, Harris County Jail; (3) R. Hill, LVN, Harris County Jail; and (4) Dr. B. Howard, Harris County Jail (Dkt. 1, at 2-3). He states that he has been diagnosed with Hepatitis C and suffers from serious pain, swelling, a cough, and other symptoms. He alleges that jail personnel, including Dr. Howard, have denied his requests for anti-viral treatment to cure Hepatitis C, telling him that Harris County does not provide the treatment and he will have to wait until he arrives at the Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ) to get it. *See*, *e.g.*, *id.* at 4-5; Dkt. 14, at 4, 8-12. He states that he was never offered, and never refused, any treatment for Hepatitis C at the jail (*id.* at 18). He claims that, if jail officials continue to deny the treatment, he could die while detained (Dkt. 1, at 5; *see* Dkt. 14, at 3 (stating that he is 63 years old with other medical issues and claiming that, if he catches COVID-19, he "will die in this county jail")).

After screening McCray's pleadings, the Court dismissed his claims against Dr. Sunder, Hill, and Sheriff Gonzales in his individual capacity. In the same order, the Court construed McCray's allegation that Harris County refuses to provide anti-viral treatment to jail inmates as a claim against Sheriff Gonzalez in his official capacity, and ordered Sheriff Gonzalez and Dr. Howard to answer the complaint (Dkt. 15). Harris County and Sheriff Gonzalez then answered (Dkt. 24; Dkt. 25) and filed a motion for summary

judgment (Dkt. 27; Dkt. 28). Dr. Howard has not appeared in this action, and the defendants' motion states that she was not served with process (Dkt. 27, at 8).

McCray claims that Harris County has a custom or policy of denying medication for Hepatitis C, which prevented him from receiving medical attention (Dkt. 14, at 8-9). He alleges that Dr. Howard violated his rights because, on December 20, 2018, and for about two-and-a-half years after, she rejected his requests for anti-viral treatment and told him that he would need to "wait until [he goes] to TDCJ" (Dkt. 14, at 4, 9; *see id.* at 9-12).[1] He further alleges that, when Dr. Howard examined him at the jail on August 27, 2020, she stated that McCray's liver was "acting up" but that was "nothing they could do" to treat his Hepatitis C (Dkt. 1, at 4-5). McCray claims that Dr. Howard knew of his liver problems and that, at the time she denied his request for anti-viral treatment, he had swollen legs and feet, which should have alerted her to the risk to his health (Dkt. 14, at 10). In response to the Court's question about how Dr. Howard's denial of treatment caused him harm, McCray did not identify any specific harm, instead repeating that he has been told that he must wait until he gets to TDCJ to receive treatment:

> I have been suffering this harm since I arrived at the Harris County Jail back in 2018 . . . and I am still suffering to this day. I have been in the county jail for almost five years[.] [E]very time I go to medical I am told by all care providers that examine me that my liver is acting up but I have to go to TDCJ to receive the treatments to cure the Hepatitis C disease.

(*id.* at 11).

The defendants present McCray's medical records (Dkt. 28) and a declaration from

---

[1] McCray states that Dr. Howard has now resigned from the jail (*id.* at 9).

Dr. Sunder, who reviewed McCray's pleadings and medical records (Dkt. 27-5). Dr. Sunder states that he was acting medical director of the Harris County Jail from 2015 through 2019, and interim executive director of the jail from 2019 through March 2022. He explains that, if an inmate arrives at the jail who has Hepatitis C but is not already receiving treatment, the medical staff monitors the inmate's condition (*id.* at 1-2). If the inmate's liver enzyme levels were "ranging from normal to slightly elevated," then "no treatments would be administered and his enzyme levels would continue to be monitored for extreme increases, which would then indicate progression of his Hepatitis C and possibly necessitate further tests and treatment" (*id.* at 2). If an inmate had sufficiently elevated liver enzyme levels, then a Hepatic ultrasound and other liver tests would be ordered and a "consultation with a gastroenterologist . . . would be requested to then determine if any treatment would be necessary" (*id.*).

Regarding McCray, Dr. Sunder states that the medical records reflect that he has Hepatitis C, along with diabetes and hypertension, and that he was not receiving medication for Hepatitis C when he was admitted to the jail (*id.*). He further states that McCray's liver enzyme levels were "consistently monitored" during his detention and were "consistently within normal to the slightly elevated range," indicating that "there was no acute liver failure or an acute need for Hepatitis C treatment" (*id.*; *see id.* at 3-4 (discussing in detail 16 liver enzyme tests monitoring McCray's condition between Dec. 20, 2018, and Apr. 15, 2023)). Dr. Sunder opines that, although McCray complained during the same period of chest pain, cough, and swollen legs, these "are not typical symptoms of Hepatitis C," but rather are attributable to his chronic conditions of diabetes and high blood pressure (*id.* at

4). He concludes, "I am of the opinion, given Mr. McCray's lab work and enzyme levels that there was not an acute need for Hepatitis C treatment" (*id.* at 5).

The defendants also submit McCray's grievance records and the Harris County Jail's inmate handbook setting out the grievance procedure. *See* Dkt. 27-1 (inmate handbook); Dkt. 27-2 (McCray's grievance history); Dkt. 27-3 (McCray's grievance records). They present evidence that McCray filed 34 grievances between May 2019 and July 2022 but that only two pertained to his treatments for Hepatitis C. *See* Dkt. 27, at 10-11; Dkt. 27-2; Dkt. 27-3. First, McCray filed a grievance in September 2019, complaining that he had not received medication for Hepatitis C since his arrival at the jail (Dkt. 27-3, at 115 (Grievance # 29264)). On October 10, 2019, after investigation, officials determined that the grievance was unfounded because his condition was being monitored (*id.* at 106; *see id.* at 109). McCray appealed and, on November 7, 2019, the grievance board agreed, based on an assessment by licensed medical professionals, that the grievance was unfounded because McCray's lab results indicated no acute need for treatment (*id.* at 106 (Grievance # 29556, appealing from Grievance # 29264); *see id.* at 107).

McCray also filed a grievance on October 16, 2019, alleging that a blood draw to check his liver could not be completed because he had not been instructed to fast before the test (*id.* at 101-02 (Grievance # 29699)). Officials deemed the grievance unfounded based on a determination by nursing staff that McCray "had liver enzymes tested," his results had been reviewed, and he would "continue to have regular follow ups." (*id.* at 100). The defendants state that McCray did not appeal (Dkt. 27, at 12 (citing Dkt. 27-3)).

The defendants state that the other grievances in McCray's records are not relevant to his Hepatitis C condition or treatment. They also contend that McCray did not file a grievance about Dr. Howard's role in his treatment for Hepatitis C (*id.* at 17).

McCray has not responded to the summary judgment motion. However, he states in his complaint that he exhausted his administrative remedies before filing suit (Dkt. 1, at 6; Dkt. 14, at 18-19; *see* Dkt. 1, at 12-14 (grievance receipts for Grievance # 30317, # 29699, and # 34806)).

As relief for his claims, McCray requests $1 million in damages and an order directing the defendants to send him outside the jail for medical care, so that he can receive anti-viral treatment to cure his Hepatitis C, or to provide him with the treatment. He also seeks a declaration that Hepatitis C has damaged his liver and that, because the defendants have withheld medical treatment, they are liable for the damage (*id.* at 5; Dkt. 14, at 19-20).

## II.  STANDARDS OF REVIEW

### A.  Summary Judgment—Rule 56

The defendants have moved for summary judgment. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact.

*Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id*. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*. The nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (cleaned up).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (cleaned up). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (cleaned up); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Evidence not referred to in the response to the motion for summary judgment is not properly before the court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

    **B.**    ***Pro Se* Filings**

In reviewing the pleadings, the Court is mindful of the fact that the plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction

and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Although the plaintiff is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to place that evidence properly before the court. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se filings liberally, we still require *pro se* parties to fundamentally abide by the rules that govern the federal courts. *Pro se* litigants must properly . . . present summary judgment evidence") (cleaned up).

### III.   ANALYSIS

McCray brings his claims under 42 U.S.C. § 1983, which provides a vehicle for a claim against a person "acting under color of state law," such as a prison official, for a constitutional violation. *See Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016). The Fourteenth Amendment protects a pretrial detainee's right to adequate medical care. *Garza v. City of Donna,* 922 F.3d 626, 634 (5th Cir. 2019); *Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003)

The defendants seek summary judgment on several grounds, including exhaustion of administrative remedies and absence of cognizable injury. McCray has not filed a response. Although Dr. Howard has not appeared or filed a dispositive motion, the defendants' arguments regarding exhaustion and injury also apply to McCray's claims against her.

#### A.   Exhaustion

The defendants urge summary judgment on exhaustion grounds. Under the Prisoner Litigation Reform Act (PLRA), inmates bringing an action regarding prison conditions under 42 U.S.C. § 1983 or other federal law must first exhaust all administrative remedies "as are available." 42 U.S.C. § 1997e(a). *See Ross v. Blake*, 136 S. Ct. 1850 (2016); *Jones v. Bock*, 549 U.S. 199 (2007). The grievance process must be completed before a federal complaint is filed, and "[i]t is irrelevant whether exhaustion is achieved during the federal proceeding." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. The exhaustion

requirement is mandatory and strictly enforced. *Moussazadeh v. Texas Dep't of Criminal Justice*, 703 F.3d 781, 789-90 (5th Cir. 2012), *as corrected* (Feb. 20, 2013); *Dillon*, 596 F.3d at 268. When an inmate's grievance is against an individual prison officer, "the reviewing officials can ordinarily expect details regarding who was involved and when the incident occurred, or at least other available information about the incident that would permit an investigation of the matter." *Gray v. White*, 18 F.4th 463, 469 (5th Cir. 2021), *cert. denied,* 142 S. Ct. 2741, 212 L. Ed. 2d 798 (2022) (cleaned up).

In this case, McCray claims that he exhausted his remedies before filing suit. The record reflects that he filed Grievance #29264 complaining that he had not received medication for Hepatitis C, and appealed the denial of relief in Grievance # 29556, thus fully exhausting the administrative process (Dkt. 27-3, at 106). The defendants argue that, because McCray did not complain in the grievance of any adverse symptoms, pain, or complications from Hepatitis C , he did not exhaust his remedies regarding his claims in this suit. Because McCray complained in the grievance that the county had denied him any treatment for Hepatitis C, including medication, the Court declines to hold that Grievances # 29264 & 29556 did not exhaust McCray's claims against Sheriff Gonzalez in his official capacity.

However, the undisputed summary judgment evidence reflects that Grievances # 29264 & 29556, which are McCray's only fully exhausted grievance regarding Hepatitis C treatment, does not mention Dr. Howard or complain that she told him that he would have to wait until he arrived at TDCJ for Hepatitis C treatment. *See* Dkt. 27-3, at 115 (Grievance # 29264); *id*. at 112 (Grievance # 29556). Therefore, McCray failed to exhaust

his administrative remedies regarding his claim against Dr. Howard. *See Jones*, 549 U.S. at 204; *Gray*, 18 F.4th at 469.

When a defending party establishes that a plaintiff has no cause of action, the defense generally inures also to the benefit of an unserved, similarly situated defendant. *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001); *see Cleveland v. Liberty Cnty. Sheriff's Dep't*, 626 F. App'x 540, 543 n.2 (5th Cir. 2015). Therefore, although Dr. Howard has not appeared in this lawsuit, the claims against her will be dismissed for failure to exhaust administrative remedies.

### B. Cognizable Injury

The defendants additionally seek summary judgment on the ground that McCray has not pleaded an injury sufficient to confer standing.

The requirement that a litigant must have standing to invoke the power of a federal court is "one of the controlling elements in the definition of a case or controversy under Article III." *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 598 (2007) (cleaned up). To establish Article III standing, a plaintiff's injury must be (1) "concrete, particularized, and actual or imminent"; (2) "fairly traceable to the challenged action"; and (3) "redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up); *see Barilla v. City of Houston, Tex.*, 13 F.4th 427, 431 (5th Cir. 2021). The Supreme Court has emphasized that "the injury-in-fact requirement requires a plaintiff to allege an injury that is both "concrete *and* particularized." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016) (emphasis original). To be concrete, the injury must "actually exist" and not be abstract; to be particularized, it "must affect the plaintiff in a personal and

individual way." *Id.* at 339-340.  As the party invoking federal jurisdiction, a plaintiff bears the burden to establish these elements and "must clearly allege facts demonstrating each element." *Id.* at 338 (cleaned up).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice to establish standing." *Stallworth v. Bryant*, 936 F.3d 224, 230 (5th Cir. 2019) (cleaned up). Moreover, when a plaintiff seeks compensatory damages for any mental or emotional injury, the PLRA requires a prisoner to show physical injury before he can recover compensatory damages for any psychological injury. 42 U.S.C. § 1997e(e); *Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014).

Here, McCray alleges that he had symptoms of Hepatitis C including pain, a cough, and swelling.  However, Dr. Sunder's affidavit states that, although McCray has Hepatitis C, his liver enzyme levels have been consistently in the normal to slightly elevated range during his detention at the Harris County Jail, thus indicating no liver failure or acute need for Hepatitis C treatment (Dkt. 27-5). He also opines that the pain, cough, and swelling of which McCray complained "are not typical symptoms of Hepatitis C" and are better attributed to his diabetes and hypertension (Dkt. 27-5, at 4). His affidavit is supported by McCray's medical records.  *See*, *e.g*., Dkt. 28, at 93-94, 149-50, 332-33, 442-43 (laboratory results).

Based on this undisputed summary judgment evidence, McCray fails to demonstrate a genuine issue of material fact as to any injury that is traceable to the defendants' failure to provide him with anti-viral treatment.  *See Clapper*, 568 U.S. at 409.  His statement in his pleadings that he could develop liver damage, *see* Dkt. 14, at 4-5, is conclusory and

does not adequately plead an imminent injury, that is, one that is "certainly impending." *Clapper*, 568 U.S. at 409 (holding that allegations of "*possible* future injury" are insufficient) (emphasis original). Additionally, to the extent McCray seeks compensatory damages for any mental or emotional injury, such damages are not available absent a showing of physical injury. 42 U.S.C. § 1997e(e); *Stauffer*, 741 F.3d at 583.

Summary judgment therefore is granted for the defendants. Because the absence of injury also establishes that McCray has no cause of action against Dr. Howard, the defense inures to her benefit and McCray's claims against her will be dismissed with prejudice. *See Lewis*, 236 F.3d at 768; *Cleveland*, 626 F. App'x at 543 n.2.

## IV.  CONCLUSION

For the reasons stated above the Court **ORDERS** as follows:

1. The defendants' motion for summary judgment (Dkt. 27) is **GRANTED**.
2. All of McCray's claims are **DISMISSED with prejudice**.
3. All other pending motions, if any, are **DENIED as moot**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on _____September 20_____, 2023.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE